**KEVIN H. KONO, OSB #023528**
kevinkono@dwt.com
**MEAGAN A. HIMES, OSB #193787**
meaganhimes@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

Attorneys for Defendants Michael Mewshaw
and Catapult, LLC (erroneously sued as
"Counterpoint Press, a California corporation")

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **EMILY C. CONROY,**<br><br>           **Plaintiff**,<br><br>   v.<br><br>**MICHAEL MEWSHAW**, an individual;<br>**COUNTERPOINT PRESS**, a California<br>corporation; **BERNIE SCHEIN**, an individual;<br>and **SKYHORSE PUBLISHING, INC.**, a<br>Delaware corporation,<br><br>           **Defendants**. | Case No. 3:21-cv-00298<br><br>**DEFENDANTS MICHAEL MEWSHAW AND CATAPULT, LLC'S (COUNTERPOINT PRESS) MOTION TO DISMISS AND ALTERNATIVE SPECIAL MOTION TO STRIKE UNDER ORS 31.150**<br><br>**Oral Argument Requested** |

DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

**Page**

MOTIONS .................................................................................................................. 1

MEMORANDUM OF LAW ...................................................................................... 1

I.      INTRODUCTION ............................................................................................ 1

II.     BACKGROUND ............................................................................................. 2

      A.    Plaintiff, Pat Conroy, and the Book. .................................................... 2

      B.    Plaintiff's Father & Her Abuse Allegations .......................................... 3

      C.    The Clark Book and Lawsuit. ............................................................... 3

      D.    Plaintiff's Complaint............................................................................. 4

III.    ARGUMENT: MOTION TO DISMISS......................................................... 5

      A.    Legal standard applicable to Rule 12(b)(6). ........................................ 5

      B.    Plaintiff fails to state any claim against Defendants. ............................ 7

            1.    The Court should dismiss Plaintiff's public disclosure of private facts claim because Plaintiff meets none of the elements. .................................. 7

                  a.    Plaintiff fails to allege *any* private information. ............................ 7

                  b.    Materials incorporated by reference or judicially noticeable establish that all facts Defendants "disclosed" were already public. ...................................................................................... 8

                  c.    Plaintiff fails to allege conduct highly offensive to a reasonable person. ......................................................................................... 13

                  d.    Plaintiff does not allege conduct that was wrongful. .................... 14

            2.    The Court should dismiss Plaintiff's IIED claim for failure to state a claim.................................................................................... 16

                  a.    Plaintiff's IIED claim fails because she merely parrots the required intent element.............................................................................. 16

                  b.    Plaintiff's IIED claim also fails because the alleged conduct does not transgress socially tolerable bounds. .................................... 17

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

IV.    ARGUMENT: ORS 31.150 SPECIAL MOTION TO STRIKE ..................................... 19

    A.    Oregon's anti-SLAPP statute applies and provides a basis for dismissal............. 19

    B.    Oregon's anti-SLAPP statute applies to the conduct alleged. ............................. 21

        1.    The Book is a written document presented in a place open to the public or a public forum. ......................................................................................... 21

        2.    Writing and publishing the Book constitutes conduct in furtherance of Defendants' exercise of the constitutional right to free speech. ............... 21

        3.    The Book concerns an issue of public interest........................................... 22

    C.    Defendants are entitled to judgment as a matter of law because Plaintiff cannot establish any issue of material fact. ..................................................................... 23

        1.    Plaintiff cannot create a genuine issue of material fact with respect to her public disclosure of private facts claim. ................................................... 23

            a.    Plaintiff cannot create any issue of fact to dispute that all relevant details in the Book had been public prior to the Book's publication, entitling Defendants to judgment................................................. 23

            b.    Plaintiff cannot show a genuine issue of fact about whether Defendants' conduct was offensive to a reasonable person.......... 23

            c.    Plaintiff cannot create a genuine issue of material fact to suggest that Defendants' conduct was wrongful. ...................................... 24

        2.    Plaintiff cannot create a genuine issue of material fact with respect to her IIED claim............................................................................................. 25

            a.    Plaintiff can point to no evidence to suggest Defendants harbored the requisite intent........................................................................ 25

            b.    Plaintiff can point to no evidence showing that Defendants' conduct constituted an extraordinary transgression of socially tolerable bounds. .......................................................................... 26

        3.    The Court should award attorney fees under ORS 31.152. ..................... 26

V.    CONCLUSION............................................................................................................ 27

4812-6995-7108v.7 0117674-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ....................................................................................................5, 15, 16

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................................5, 16

*Coto Settlement v. Eisenberg*,
 593 F.3d 1031 (9th Cir. 2010) .................................................................................................6

*Daniels-Hall v. Nat'l Educ. Ass'n*,
 629 F.3d 992 (9th Cir. 2010) ........................................................................................5, 9, 14

*Derry v. EDM Enters., Inc.*,
 2010 WL 3586739 (D. Or. Sept. 13, 2010) ...........................................................................17

*Dossett v. Ho-Chunk, Inc.*,
 472 F. Supp. 3d 900 (D. Or. 2020) ........................................................................................22

*DuBoff v. Playboy Enters. Int'l, Inc.*,
 2007 WL 1876513 (D. Or. June 26, 2007) .............................................................................22

*Emily C. Conroy v. University of South Carolina Press et al.*,
 Case No. 3:20-cv-00366 (D. Or.) .............................................................................................3

*Gardner v. Martino*,
 2005 WL 3465349 (D. Or. Sep. 19, 2005) .......................................................................19, 20

*Gonzalez v. Planned Parenthood of Los Angeles*,
 759 F.3d 1112 (9th Cir. 2014) .............................................................................................5, 9

*Grosjean v. Am. Press Co.*,
 297 U.S. 233 (1936) ................................................................................................................21

*Heliotrope Gen. Inc. v. Ford Motor Co.*,
 189 F.3d 971 (9th Cir. 1999) ...................................................................................................6

*Knievel v. ESPN*,
 393 F.3d 1068 (9th Cir. 2005) .................................................................................................6

*LaHodny v. 48 Hours*,
 2015 WL 1401676 (D. Or. Mar. 24, 2015) ............................................................................15

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001)), *aff'd*, 563 F.3d 981 (9th Cir. 2009) .....................................1, 20

*Parents for Priv. v. Barr*,
    949 F.3d 1210 (9th Cir.), *cert. denied*, 141 S. Ct. 894 (2020) ....................................................6

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) .......................................................................................20, 26

*Porter v. Jones*,
    319 F.3d 483 (9th Cir. 2003) ........................................................................................5

*Simpson v. Burrows*,
    90 F. Supp. 2d 1108 (D. Or. 2000) ...........................................................................19

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) ......................................................................................6

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ...................................................................................5, 9

*Titus v. City of Prairie City*,
    802 F. Supp. 2d 1210 (D. Or. 2011), *rev'd in part on other grounds sub nom.*
    *Titus v. Horrell*, 488 F. App'x 233 (9th Cir. 2012) ...............................................18

*Van Buskirk v. Cable News Network, Inc.*,
    284 F.3d 977 (9th Cir. 2002) ........................................................................................6

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ....................................................................................6, 9

*White v. Regents of Univ. of Cal.*,
    188 F.3d 516 (9th Cir. 1999) .........................................................................................7

*Yeti Enters. Inc. v. NPK, LLC*,
    2015 WL 3952115 (D. Or. June 29, 2015) .................................................................8

**State Cases**

*Anderson v. Fisher Broad. Cos., Inc.*,
    300 Or. 452, 712 P.2d 803 (1986) .........................................................................15, 24

*Ayers v. Lee Enters. Inc.*,
    277 Or. 527, 561 P.2d 998 (1977) .................................................................................8

*Delaney v. Clifton*,
    180 Or. App. 119, 41 P.3d 1099 (2002)...................................................................17, 18

Page iv – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

4812-6995-7108v.7 0117674-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Flowers v. Bank of Am. Nat. Tr. & Sav. Ass'n*,
    67 Or. App. 791, 679 P.2d 1385 (1984)......................................................................7

*Hall v. May Dep't Stores Co.*,
    292 Or. 131, 637 P.2d 126 (1981), *abrogated on other grounds by McGanty v.*
    *Staudenraus*, 321 Or. 532, 901 P.2d 841 (1995) ......................................................19

*Hamilton v. Crown Life Insurance Co.*,
    246 Or. 1, 423 P.2d 771 (1967) ...................................................................13, 14, 24

*House v. Hicks*,
    218 Or. App. 348, 179 P.3d 730 (2008)..............................................................17, 18

*Humphers v. First Interstate Bank of Or.*,
    68 Or. App. 573, 684 P.2d 581 (1984), *rev'd in part on other grounds*, 298 Or.
    706, 696 P.2d 527 (1985)............................................................................................17

*Kraemer v. Harding*,
    159 Or. App. 90, 976 P.2d 1160 (1999)......................................................................18

*Marleau v. Truck Ins. Exch.*,
    333 Or. 82, 37 P.3d 148 (2001) ..............................................................................7, 14

*McGanty v. Staudenraus*,
    321 Or. 532, 901 P.2d 841 (1995) ..............................................................................16

*Mullen v. Meredith Corp.*,
    271 Or. App. 698, 353 P.3d 598 (2015)......................................................................20

*Neumann v. Liles*,
    295 Or. App. 340, 434 P.3d 438 (2018)......................................................................22

*Patton v. J.C. Penney Co.*,
    301 Or. 117, 719 P.2d 854 (1986), *abrogated on other grounds by McGanty v.*
    *Staudenraus*, 321 Or. 532, 901 P.2d 841 (1995) ................................................17, 26

*Plotkin v. State Accident Ins. Fund*,
    280 Or. App. 812, 385 P.3d 1167 (2016)....................................................................22

*State v. Lien*,
    364 Or. 750, 441 P.3d 185 (2019) ................................................................................2

*Trout v. Umatilla Cnty. Sch. Dist. UH3-Milton-Freewater (McLoughlin Union*
    *High Sch.)*,
    77 Or. App. 95, 712 P.2d 814 (1985)............................................................................8

4812-6995-7108v.7 0117674-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Young v. Davis*,
   259 Or. App. 497, 314 P.3d 350 (2013)...............................................................................22

**State Statutes**

ORS 31.115....................................................................................................................20

ORS 31.150............................................................................................................. *passim*

ORS 31.150(2)....................................................................................................20, 21, 23

ORS 31.150(3)................................................................................................................20

ORS 31.150 *et seq*............................................................................................................1

ORS 31.152....................................................................................................................26

ORS 31.152(3)............................................................................................................1, 26

**Rules**

Fed. R. Civ. P. 8.................................................................................................... *passim*

Fed. R. Civ. P. 12.................................................................................................. *passim*

Fed. R. Civ. P. 56....................................................................................................20, 25

LR 7-1 .............................................................................................................................1

**Constitutional Provisions**

U.S. Const. amend.I..................................................................................................14, 21

**Treatises**

Restatement (Second) of Torts § 46, cmt. d (Am. L. Inst. 1965) ..................................17

4812-6995-7108v.7 0117674-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## LR 7-1 – CERTIFICATION

Counsel for defendants Michael Mewshaw and Catapult, LLC, a Delaware company (erroneously sued as "Counterpoint Press, a California corporation") ("Counterpoint") (collectively, "Defendants"), conferred with counsel for plaintiff Emily Conroy ("Plaintiff") by telephone before filing these motions. Despite good faith efforts, Counsel were unable to resolve the issues.

## MOTIONS

Defendants move under Fed. R. Civ. P. 8 and Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's claims against them for failure to state a claim.

In the alternative, Defendants move under ORS 31.150 *et seq.* (Oregon's anti-SLAPP statute) to strike Plaintiff's claims against them.[1] Defendants also move under ORS 31.152(3) for an award of their attorney fees and costs.

These motions are supported by the following Memorandum of Law and the concurrently filed Request for Judicial Notice, Declaration of Kevin H. Kono ("Kono Decl."), and Declaration of Michael Mewshaw ("Mewshaw Declaration").

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiff seeks to punish Counterpoint and Michael Mewshaw for, in the context of their book about public figure and renowned author Pat Conroy, publishing facts about her that were already public. Plaintiff is Pat Conroy's stepdaughter. Counterpoint published Michael Mewshaw's book, *The Lost Prince: A Search for Pat Conroy* (the "Book"), which recounts Mewshaw's history with Pat Conroy, focusing on Conroy's character and contrasting his public reputation and private behavior. The memoir hews closely to its genre by discussing all aspects of that history and the players in it. A relatively small portion of that history includes Plaintiff's

---

[1] "SLAPP" stands for "Strategic Lawsuit Against Public Participation." *Metabolife Int'l Inc. v. Wornick,* 264 F.3d 832, 837 n.7 (9th Cir. 2001).

Page 1 – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

public allegations that her biological father sexually abused her and Pat Conroy's response.  But even though the Book in general relies heavily on Mewshaw's personal experiences with Pat Conroy, as to Plaintiff, all information the Book discloses was *already public*.

Despite this, Plaintiff seeks to transform Mewshaw's memoir into an invasion of her privacy and an intentional attempt to inflict emotional distress, but Plaintiff fails to state either claim.  Plaintiff cannot state a claim for public disclosure of private facts because she does not identify any specific content from the Book that was not already public and cannot meet the other elements of her claim.[2]  Nor is publishing already public facts outside the boundaries of socially tolerable conduct such that she could state any claim for intentional infliction of emotional distress.  The Court should dismiss Plaintiff's claims against Defendants for failure to allege any plausible claim for relief.  In the alternative, the Court should dismiss Plaintiff's claims under ORS 31.150 because Plaintiff cannot show any genuine issue of material fact as to either of her claims.

## II.    BACKGROUND

### A.    Plaintiff, Pat Conroy, and the Book.

Pat Conroy authored books including *The Great Santini* and *The Prince of Tides*.  Compl. ¶ 9, 24.  Conroy's fame led him to become the subject of books by numerous others, including Katherine Clark's *My Exaggerated Life* ("Clark's Book") and co-defendants Bernie Schein's and Skyhorse Publishing, Inc.'s (collectively, "Co-Defendants") *Pat Conroy: Our Lifelong Friendship*.[3]  Compl. ¶ 1.  The Book is also one such book.  Michael Mewshaw authored the

---

[2] The "umbrella tort" of "invasion of privacy" is actually comprised of four torts: "(1) intrusion upon seclusion; (2) appropriation of another's name or likeness; (3) false light; and (4) publication of private facts."  *State v. Lien*, 364 Or. 750, 783-84, 441 P.3d 185 (2019) (citation omitted).  Defendants refer to Plaintiff's "Invasion of Privacy" claim as a public disclosure of private facts claim because that is the specific tort Plaintiff alleges.

[3] Co-Defendants' publication is entirely separate from and unrelated to the Book.  Plaintiff alleges each publication caused emotional distress and improperly lumps Defendants and Co-Defendants together.  Defendants do not concede that the claims are properly joined and reserve

Book, which Counterpoint published on February 26, 2019.  Compl. ¶ 16.  The Book generally recounts Mewshaw's history with Conroy, including personal details from their many visits and Mewshaw's encounters with Conroy's family.  Compl. ¶¶ 16, 24.  The Book touches on the struggles in Conroy's orbit, including allegations of abuse Plaintiff lodged against her biological father.  Compl. ¶¶ 9, 24.

**B.      Plaintiff's Father & Her Abuse Allegations.**

Plaintiff is Conroy's stepdaughter.  Compl. ¶ 9.  In 1985, when Plaintiff was eleven years old, she first made sexual abuse allegations against Plaintiff's father, Dr. Alan Fleischer.  Compl. ¶ 11.  She confided in multiple people about the abuse, including Conroy.  *Id.*  In August 1986, Fleischer was indicted in Georgia on one felony count of child molestation of Plaintiff.  Compl. ¶ 12.  The case attracted the attention of newspapers, which published a number of articles about Plaintiff's allegations.  Compl. ¶ 13.

**C.      The Clark Book and Lawsuit.**

Kathryn Clark published *My Exaggerated Life* ("Clark's Book") in 2018.  Compl. ¶ 1.  Clark's Book is an "oral biography of Pat Conroy" that Plaintiff alleges "revealed Plaintiff's private information."  *Id.*  Plaintiff has sued Clark in *Emily C. Conroy v. University of South Carolina Press et al.*, Case No. 3:20-cv-00366 (D. Or.) (the "Clark Lawsuit") concerning details the book disclosed.  Compl. ¶¶ 1, 18.  While simultaneously alleging in the Clark Lawsuit that Clark publicly disclosed private facts regarding Plaintiff's sexual abuse, Compl. ¶ 1, Plaintiff alleges Defendants' Book "follow[s] the example of the 2018-published *My Exaggerated Life*" by including unspecified "graphic details of the abuse Emily suffered that had not before been published or otherwise made public."  Compl. ¶ 18.  In her Complaint, however, Plaintiff does

---

the right to move to sever the claims.  Defendants do not do so here because the Court should dismiss the claims against them outright.

Page 3 – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

not identify *any details* that conceivably remained private after Clark's Book (and after many prior publications discussing her abuse).

### D.    Plaintiff's Complaint.

In this lawsuit, Plaintiff asserts the same two claims—publication of private facts and intentional infliction of emotional distress (IIED)—against each of the four defendants, based on their two respective books. *See* Compl. ¶¶ 27-58.  In alleging her publication of private facts claim against Defendants, Plaintiff alleges that "the facts disclosed in the…Book about [Plaintiff's] sexual abuse are private facts," Compl. ¶ 28, but she does not identify any fact that was previously private but made public by Defendants, *see generally* Compl.  Plaintiff also alleges that Defendants' conduct was "highly objectionable and would be highly offensive to a reasonable person" because Defendants "[d]isclos[ed]…intimate details of [Plaintiff's] abuse, including without seeking and obtaining her consent."  Compl. ¶ 31.  Plaintiff alleges that Defendants "acted wrongfully in publishing the private facts at issue" because "Defendants made no effort to seek Emily's permission to tell her story."  Compl. ¶ 32.

In alleging her IIED claim, Plaintiff alleges simply that "[i]n publishing details about [Plaintiff's] abuse, Defendants…intended to inflict severe emotional distress on her. Alternatively, Defendants…knew that such distress was certain or substantially certain to result from the publication of the details about the abuse."  Compl. ¶ 44.  Plaintiff also alleges that Defendants did "not seek[] [Plaintiff's] approval to reveal details about her abuse and publicly reveal[ed] intimate details not previously publicized about her abuse," which she alleges constituted "an extraordinary transgression of the bounds of socially tolerable conduct."  Compl. ¶ 45.

Defendants move under Rule 12(b) to dismiss Plaintiffs claims against them and alternatively under Oregon's anti-SLAPP statute for judgment as a matter of law.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4812-6995-7108v.7 0117674-000001

### III.    ARGUMENT: MOTION TO DISMISS

This Court should dismiss Plaintiff's claims for failure to state a claim because Plaintiff fails to plead more than conclusory allegations as to most elements of her claims and because documents in the public realm and subject to judicial notice (and incorporated by reference into the Complaint) show any claimed private information was already public.

### A.    Legal standard applicable to Rule 12(b)(6).

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy…the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

While a court must accept as true all allegations contained in a complaint when considering a motion to dismiss, that tenet "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Courts are similarly not required "to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) ("Although we normally treat all of a plaintiff's factual allegations in a complaint as true, we need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.") (internal quotation and alteration omitted); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

A court may consider matters subject to judicial notice and matters incorporated by reference into a complaint without converting a motion to dismiss into one for summary judgment.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (judicial notice); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (documents incorporated by reference).  Specifically, a court may take judicial notice in considering a motion to dismiss to indicate what was in the public realm at the relevant time.  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *see also Heliotrope Gen. Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (taking judicial notice "that the market was aware of the information contained in news articles submitted by the defendants"). Similarly, a complaint incorporates by reference documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (citation omitted); *see also Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (considering exhibits incorporated by reference into the complaint to determine that plaintiff incorrectly alleged that the defendants' allegedly defamatory statements were false).

Taking into account the above limitations on the tenet that a court must accept a plaintiff's allegations as true, Rule 12(b)(6) requires that "a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief."  *Parents for Priv. v. Barr*, 949 F.3d 1210, 1221 (9th Cir.), *cert. denied*, 141 S. Ct. 894 (2020).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4812-6995-7108v.7 0117674-000001

**B.    Plaintiff fails to state any claim against Defendants.**

The Court should dismiss Plaintiff's public disclosure of private facts and IIED claims under Rule 12(b)(6) because Plaintiff's Complaint fails to allege a set of facts that would entitle her to relief.

### 1.    The Court should dismiss Plaintiff's public disclosure of private facts claim because Plaintiff meets none of the elements.

To state a claim for public disclosure of private facts, Plaintiff must allege facts showing: (1) the plaintiff had private information which would have remained private; (2) the defendant made that private information known to the public; (3) publication of that information was offensive to a reasonable person; and (4) the defendant's conduct was wrongful apart from inflicting emotional distress on the plaintiff.  *Marleau v. Truck Ins. Exch.*, 333 Or. 82, 93, 37 P.3d 148 (2001); *Flowers v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 67 Or. App. 791, 797, 679 P.2d 1385 (1984).  Plaintiff fails to meet ***any*** elements of her claim.

### a.    Plaintiff fails to allege *any* private information.

First, the Court should dismiss Plaintiff's claim because Plaintiff fails to plead any private facts that Defendants allegedly made public.  *See White v. Regents of Univ. of Cal.*, 188 F.3d 516 (9th Cir. 1999) (district court "properly dismissed [plaintiff's] claim for public disclosure of private facts because he failed to allege specific private facts made public").  Plaintiff details how she finds the Book "distasteful," *see* Compl. ¶¶ 23-24, but she fails to identify *any* specific fact included in the Book that she alleges was previously private.  Instead, she makes only the conclusory allegation that "[f]ollowing the example of the 2018-published *My Exaggerated Life* by Katherine Clark, both the Mewshaw Book and the Schein Book also include graphic details of the abuse Emily suffered *that had not before been published or otherwise made public*."  Compl. ¶ 18 (emphasis added).  That allegation is too conclusory to state a claim, particularly given the express acknowledgment that *another* book previously disclosed the unspecified details (and is the basis for *the same claims against yet another author*).  Plaintiff's bare allegation that "the facts disclosed in the Mewshaw Book about Emily's

4812-6995-7108v.7 0117674-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

sexual abuse are private facts" is a "merely conclusory" allegation that the Court should disregard and that is insufficient to state a claim.

> **b.**    **Materials incorporated by reference or judicially noticeable establish that all facts Defendants "disclosed" were already public.**

Plaintiff cannot cure her pleading deficiency because materials the Complaint incorporates by reference and materials subject to judicial notice establish that *all* challenged facts regarding Plaintiff were already public.  "In a claim for invasion of privacy by publication of facts, the facts disclosed must be private, not public."  *Trout v. Umatilla Cnty. Sch. Dist. UH3-Milton-Freewater (McLoughlin Union High Sch.)*, 77 Or. App. 95, 100, 712 P.2d 814 (1985).  "There is no liability (in an action for breach of privacy) when the defendant merely gives further publicity to information about the plaintiff which is already public.  Thus, there is no liability for giving publicity to facts about the plaintiff's life which are matters of public record."  *Ayers v. Lee Enters. Inc.*, 277 Or. 527, 536, 561 P.2d 998 (1977) (quotation marks and citation omitted).  In *Ayers*, police records containing a rape victim's name and address were public records not exempt from public disclosure laws then in existence, so a newspaper's publication of them did not constitute publication of private facts.  *Id.*  Even public records subject to exemptions from disclosure are no longer private and cannot support liability for publication of private facts where the public body makes them available to members of the public.  *See Yeti Enters. Inc. v. NPK, LLC*, 2015 WL 3952115, at *6 (D. Or. June 29, 2015) (subsequent publication of phone calls did not disclose private facts where public body determined (even incorrectly) that recordings were subject to public disclosure).  Thus, information is not private for purposes of publication of private facts where the information is available to the public, regardless of how broadly the information is disseminated.

Here, even though Plaintiff fails to allege facts from the Book that supposedly were private before the Book's publication, the below table ("Table") sets forth each statement in the

Page 8 – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

4812-6995-7108v.7 0117674-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Book that refers to Plaintiff's abuse.[4],[5]  Opposite the quotes from the Book are details published in judicially noticeable materials or those otherwise incorporated by reference into the Complaint (and thus that are properly considered on this motion).[6]  *See Daniels-Hall*, 629 F.3d at 998; *Gonzalez*, 759 F.3d at 1115; *Steckman*, 143 F.3d at 1295-96; *Von Saher*, 592 F.3d at 960.  As the Table shows, Plaintiff's abuse was unquestionably publicly available information when the Book was published, ranging from general references to graphic details, including identifying Plaintiff both by relationship (making her readily identifiable) and by name.

| Content from the Book | Content from Prior Publications |
|---|---|
| "Emily now claimed Dr. Fleischer had raped and forcibly sodomized her." Kono Decl., Ex. 1, at 15. | A 1988 newspaper article states that Conroy's stepdaughter "told [Conroy] her father had sodomized her."  Kono Decl. Ex 5.<br><br>Clark's Book (published in 2018),[7] refers to Fleischer's "savage rape" and "anal rape" using Plaintiff's name, and describes the alleged abuse as "rape in all possible ways, committed by her father."  Kono Decl. Ex. 3, at 4-7. |

---

[4] The Book is incorporated by reference into the Complaint.  *See* Compl. ¶¶ 1, 16, 23-24.  It is also subject to judicial notice.

[5] The Book also refers to Plaintiff's suicide attempts.  Kono Decl., Ex. 1, at 18 (containing reference to suicide attempts).  As Defendants understand Plaintiff's Complaint, Plaintiff bases her claims only on the discussions of the sexual abuse and does not contend that her suicide attempts were private facts.  Indeed, several prior publications disclose her suicide attempts.  *See, e.g.*, Kono Decl. Ex. 2, at 4 (*The Death of Santini*, by Pat Conroy, published in 2013) ("My beloved stepdaughter Emily had entered into her own period of breakdown and had tried to kill herself on several occasions."); Ex. 3, at 11, 13 (Clark's Book) ("Emily tried to kill herself by taking a whole bottle of pills"); Ex. 4, at 5 (*Understanding Pat Conroy*, by Catherine Seltzer, published in 2015, stating that "Emily…made a series of suicide attempts[.]").

[6] Defendants have concurrently filed a Request for Judicial Notice.

[7] Clark's Book, in addition to being judicially noticeable, is incorporated by reference into the Complaint.  *See* Compl. ¶¶ 1, 18.

Page 9 – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

4812-6995-7108v.7 0117674-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

| Content from the Book | Content from Prior Publications |
|---|---|
| "It all started, Emily said, with father and daughter snuggling in the same bed. Then he began kissing and touching her.  Later he started masturbating on her and sticking his penis into her mouth." Kono Decl. Ex. 1, at 11; *see also id.* at 14 (quoting Pat Conroy as saying, "Know what Emily told me the other night? … It was bad enough that he beat off on her."). | Clark's Book includes a passage in that discusses, among other details, that "Emily claims that she was sexually molested by her father[,]" that this claim "include[d] rape and anal rape[,]" and the alleged conduct had "been going on since she was three or four years old[.]"  Kono Decl. Ex. 3, at 5-13.<br><br>A 1988 newspaper article quotes Conroy as stating, with respect to his "stepdaughter, then 11," that "[h]er father masturbates on her."  Kono Decl. Ex. 5. |
| "[Pat] compiled a narrative based on interviews with his stepdaughter and stitched together a thirteen-page single-spaced *J'accuse* entitled 'Emily Fleischer's Testimony of the Sexual Abuse by Her Father, Dr. Alan Fleischer.'  He turned this over to the police, to the press, and to Alan Fleischer.  In an accompanying letter, he wrote that Emily had 'had her entire childhood polluted by the satanic evil of her father … You kept your daughter as a sexual slave.  There was bondage, violence, and you turned your home into a pornographic nightmare for your child.'" Kono Decl. Ex. 1, at 24. | A 1987 newspaper article stated, "For months, [Conroy] says, he wrote down the child's stories of abuse.  Last year, he sent a 13-page copy of the allegation to his former lawyer, [who stated,] 'I was bound professionally to turn it over to the county attorney and the sheriff[.]'"  Kono Decl. Ex. 6.  The article identified "the child" as "Fleischer's daughter."  *Id.*<br><br>Clark's Book described that Fleisher "had raped [Plaintiff] time and time again, held her down, starved her, beat her senseless. He wouldn't let her eat until she agreed to the rape."  Kono Decl. Ex. 3, at 8.  Clark's Book also refers to Emily's disclosure of her abuse to others in co-defendant Bernie Schein's class, stating, that Emily "was writing about her sexual abuse, and when she finished, she read it aloud to the class. The class gave her a standing ovation.  Emily broke down; the class broke down."  *Id.* at 10. |

Page 10 – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

| Content from the Book | Content from Prior Publications |
|---|---|
| "Unless he got satisfaction in court, Pat vowed he would reveal in writing how Fleischer 'took off Emily's clothes in the middle of the night and he masturbated on her.' … In yet another letter he wrote, 'Your daughter Emily's story is now complete.' In addition to penetrating her vaginally, orally, and anally, Alan had, according to Pat, tried to strangle his daughter when she resisted." Kono Decl. Ex. 1, at 24-25. | A 1988 newspaper article quotes Pat Conroy as stating about his "stepdaughter, then 11," that, "[h]er father masturbates on her." Kono Decl. Ex. 5. The same article states that Conroy's stepdaughter "told [Conroy] her father had sodomized her." *Id*.<br><br>Clark's Book described that Fleisher "had raped [Plaintiff] time and time again, held her down, starved her, beat her senseless. He wouldn't let her eat until she agreed to the rape." Kono Decl. Ex. 3, at 8. |
| "In the spring of 1988, [Pat Conroy] granted two interviews to the *Atlanta Constitution*, both of which disclosed that Fleischer had been indicted in DeKalb County, Georgia, for molesting Emily. Maintaining that his stepdaughter had given him permission, he revealed much of what she had confided to him during their sessions in the penthouse on Piazza Farnese." Kono Decl. Ex. 1, at 17; *see also id*. at 23 (noting that "Fleischer had long since disappeared from public view after a series of sensational newspaper headlines charged him with sexually molesting his daughter"). | A 1986 newspaper article states that while on a book tour, "[Pat] Conroy said his wife's former husband has been charged with molesting their 12-year-old daughter." The same article notes that a Dekalb County Assistant District Attorney confirmed that Fleischer was indicted "on a felony charge of child molestation involving his daughter." Kono Decl. Ex. 7.<br><br>A 1987 newspaper article states that Pat Conroy's "latest book [The Prince of Tides] deals with the alleged sexual abuse of his 12-year-old stepdaughter by her father, Dr. Alan Fleischer …. Fleischer was indicted Aug. 14 on a felony charge of molesting his daughter …. The allegations focus on events in 1982, when Fleischer and the Conroys lived in the Atlanta area. The girl has been in the custody of Conroy and his wife, Lenore." Kono Decl. Ex. 8.<br><br>A 1988 newspaper article stated, "In July 1986, a Dekalb County grand jury indicted Fleischer on sexual molestation charges. But to spare the daughter, charges were dropped and the case never went to trial." Kono Decl. Ex. 5. The same article stated, "At a conference of child advocates in Charleston, S.C., Conroy for the first time revealed the grim details of the sexual abuse of his stepdaughter …. The conference, [Pat Conroy] said, provided a perfect forum for [his |

4812-6995-7108v.7 0117674-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main ∙ (503) 778-5299 fax

| Content from the Book | Content from Prior Publications |
|---|---|
| | stepdaughter's] message.  Conroy asked his stepdaughter beforehand how she felt about the disclosure.  'She said, "Go for it,'" Conroy said.  "'Because it might help other kids like me.  Tell them I'll join a group of kids when I get older who have been through the same thing.'"  *Id.*

Another 1988 newspaper article states that Fleischer was indicted on charges for "molesting his daughter, then 8, in 1982."  Kono Decl. Ex. 9.

A 1989 article states that Fleischer "was indicted in August 1986 in DeKalb county on one count of sexually molesting his daughter.  Prosecutors in the suburban Atlanta county accuse Fleischer of molesting his daughter, now 14, sometime between Dec. 1, 1982, and Jan. 1, 1983, when Fleischer was visiting from Tucson….  Similar Charges were investigated in 1986 and 1987 by the Pima County's Attorney's Office."  Kono Decl. Ex. 10.

A 1990 newspaper article stated that Fleischer was indicted "for allegedly molesting his daughter during several visits when she was about 8 years old."  Kono Decl. Ex. 11. |
| *Generally identifying Plaintiff by name as the subject of Fleischer's abuse, as alleged in the Complaint ¶¶ 14 and 15* | A 1988 newspaper article identifies Plaintiff by name as Pat Conroy's stepchild with Lenore Fleischer.  Kono Decl. Ex. 12.

Pat Conroy's 2013 book, *Death of Santini*, noted that "Emily had a poisonous relationship with her whole family as well as the planet Earth.  She had survived the accusations of sexual assault she made against her father[.]"  Kono Decl. Ex. 2, at 3.

*Understanding Pat Conroy*, by Catherine Seltzer, published in 2015, says that Pat Conroy's marriage to Plaintiff's mother "was quickly infected by the bitterness of Fleischer's battles with her ex-husband, the most serious of which were focused on Emily's accusations that her father had sexually molested her."  Kono Decl. Ex. 4, at 3.

Clark's Book openly discusses "the sexual abuse of [Pat Conroy's] stepdaughter, Emily Fleischer, by her father, head of |

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

| Content from the Book | Content from Prior Publications |
|---|---|
| | the Neurosurgery Dept. at the Univ. of Arizona.  His name is Dr. Alan Fleischer."  Kono Decl. Ex. 3, at 6.<br><br>Clark's Book repeatedly references Plaintiff by name in all instances cited in this Table.  *See generally* Kono Decl. Ex. 3. |

Plaintiff's public disclosure of private facts claim against Defendants fails because all relevant facts in the Book were public before the Book's publication.  The Court cannot accept as true the conclusory allegation that Defendants' publicly disclosed unspecified private facts, particularly when documents incorporated by reference and judicially noticeable documents show the allegation to be untrue.  As the Table shows, Plaintiff cannot plausibly allege that the Book disclosed any fact that was private when the Book was Published.

### c.    Plaintiff fails to allege conduct highly offensive to a reasonable person.

Even if the Book published a private fact about Plaintiff, which the Table shows did not occur, the Court should dismiss Plaintiff's publication of private facts claim because Plaintiff's allegations do not support a conclusion that Defendants' conduct was highly offensive to a reasonable person—another necessary element of her claim.  First, Plaintiff's allegations regarding the purported offensiveness of Defendants' conduct are impermissibly conclusory.  Plaintiff alleges only that "Disclosure of the intimate details of [Plaintiff's] abuse, including without seeking and obtaining her consent, is highly objectionable and would be highly offensive to a reasonable person."  Compl. ¶ 31.  This mere recitation of the required element fails to meet Rule 8's requirements.

Second, the only arguable factual allegation—that Defendants published the Book "without seeking and obtaining her consent"—fails as a matter of law to support a finding that publication was "highly objectionable and would be highly offensive to a reasonable person."  In *Hamilton v. Crown Life Insurance Co.*, 246 Or. 1, 6, 423 P.2d 771 (1967), the Oregon Supreme

4812-6995-7108v.7 0117674-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Court found that allegations of unconsented disclosure of sensitive personal information alone is not, without more, "offensive to a reasonable person" and thus fails to state a cause of action. While selling insurance door-to-door, an insurance agent disclosed the nature of plaintiff's husband's suicide and the insurance benefits plaintiff received. *Id.* at 2-3. The court commented that the "defendants' conduct was offensive and boorish[,]…was in complete disregard of the plaintiff's wishes and feelings, and was no doubt well outside the ethical norms of the insurance industry." *Id.* at 5. Nonetheless, the court found that the husband's suicide was for some time "notorious enough to be newsworthy" and disclosing related facts did not support a cause of action. *Id.* Under *Hamilton* (and under general First Amendment principles—the media regularly publishes information without the subject's consent), Plaintiff's allegation that publication without her consent is "highly offensive to a reasonable person" fails as a matter of law.

### d.    Plaintiff does not allege conduct that was wrongful.

Finally, Plaintiff fails to state a claim for public disclosure of private facts because she fails to plead the "wrongful conduct" necessary for the claim. *See Marleau*, 333 Or. at 93 (conduct must be wrongful apart from allegedly inflicting emotional distress). Plaintiff alleges only that Defendants "acted wrongfully in publishing the private facts at issue" because "Defendants made no effort to seek [Plaintiff's] permission to tell her story—precisely because they likely knew or believed that, had they asked, Emily would have refused permission to publish her private information." Compl. ¶ 32. This is just another permutation of the "unconsented" publication idea that fails for the reasons described above: disclosing information without consent, standing alone, is neither highly offensive to a reasonable person nor wrongful.

First, the Court should not accept as true Plaintiff's allegation that "Defendants made no effort to seek [Plaintiff's] permission to tell her story" because the Court is not obligated to entertain "unwarranted deductions of fact[] or unreasonable inferences." *Daniels-Hall*, 629 F.3d at 998. Just because Plaintiff did not hear from Defendants in advance of the Book's publication

does not warrant the deduction or inference that "Defendants made no effort" to contact her—just as Plaintiff's failure to serve Defendants for six months after Plaintiff filed her Complaint does not necessarily mean Plaintiff "made no efforts" to serve them.  Without the unwarranted deduction or inference, Plaintiff's allegation simply identifies the Book's publication as "wrongful"—"a threadbare recital of the elements of a cause of action, supported by mere conclusory statements," which cannot suffice.  *Iqbal*, 556 U.S. at 678.

But even if the Court accepted as true Plaintiff's allegation that "Defendants made no effort to seek [Plaintiff's] permission to tell her story," Plaintiff's claim still fails.

> [I]n Oregon the truthful presentation of facts concerning a person, even facts that a reasonable person would wish to keep private and that are not 'newsworthy,' does not give rise to common-law tort liability for damages for mental or emotional distress, unless the manner or purpose of defendant's conduct is wrongful in some respect apart from causing the plaintiff's hurt feelings.

*Anderson v. Fisher Broad. Cos., Inc.*, 300 Or. 452, 469, 712 P.2d 803 (1986).  The fact that details about a person were published without their consent alone does not satisfy the "wrongful" element of an invasion of privacy claim.  *Id.*  ("Without a showing that plaintiff's picture was either obtained or broadcast in a manner or for a purpose wrongful beyond the unconsented publication itself, that claim fails.").  Instead, courts look to whether the private facts were wrongfully obtained, or whether the parties shared a special relationship that obligated the defendant to keep the facts private.  *See LaHodny v. 48 Hours*, 2015 WL 1401676, at *6 (D. Or. Mar. 24, 2015) (dismissing publication of private facts claim where defendants broadcast photos of plaintiff's home and family without plaintiff's consent, because the complaint contained "no allegations that defendants wrongfully obtained the pictures or that they were aware of some obligation to keep them private").  Plaintiff does not and cannot make any allegation that Defendants wrongfully obtained any information or that they had a special relationship with Plaintiff.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax
4812-6995-7108v.7 0117674-000001

Publishing sensitive details without a person's consent is not itself wrongful, and Plaintiff cannot allege that Defendants wrongfully obtained any private information or had a special relationship that obligated them to keep that information private. Plaintiff fails to satisfy any element of her claim for public disclosure of private facts, and the Court should dismiss it.

### 2. The Court should dismiss Plaintiff's IIED claim for failure to state a claim.

To state an IIED claim, Plaintiff must show: (1) Defendants intended to inflict severe emotional distress; (2) Defendants' acts were the cause of Plaintiff's severe emotional distress; and (3) Defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *McGanty v. Staudenraus,* 321 Or. 532, 543, 901 P.2d 841 (1995). Plaintiff's claim fails because her allegations of Defendants' intent are impermissibly conclusory, and her allegations that Defendants' conduct exceeded the bounds of socially tolerable conduct fail as a matter of law.

### a. Plaintiff's IIED claim fails because she merely parrots the required intent element.

Plaintiff fails to state her IIED claim against the Defendants because she merely recites the standard for intent without factual allegations and thus does not satisfy Rule 8. The Complaint alleges only that "[i]n publishing details about [Plaintiff's] abuse, Defendants Mewshaw and Counterpoint Press intended to inflict severe emotional distress on her. Alternatively, Defendants Mewshaw and Counterpoint Press knew that such distress was certain or substantially certain to result from the publication of the details about the abuse." Compl. ¶ 44. Plaintiff alleges *no factual matter* to support her allegations of intent and thus fails to plead the requisite facts sufficient to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Page 16 – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

b.    **Plaintiff's IIED claim also fails because the alleged conduct does not transgress socially tolerable bounds.**

Plaintiff's IIED claim also fails because she has not sufficiently alleged and cannot allege that Defendants' conduct extraordinarily transgressed socially tolerable bounds.  Plaintiff's sole allegation regarding this element is that "not seeking Emily's approval to reveal details about her abuse and publicly revealing intimate details not previously publicized about her abuse were an extraordinary transgression of the bounds of socially intolerable conduct."  Compl., ¶ 45.  This allegation fails as a matter of law to satisfy the "socially intolerable conduct" element.

Socially intolerable conduct is conduct that is "outrageous in the extreme."  *Patton v. J.C. Penney Co.*, 301 Or. 117, 124, 719 P.2d 854 (1986), *abrogated on other grounds by McGanty v. Staudenraus*, 321 Or. 532, 901 P.2d 841 (1995).  The conduct must be "regarded as atrocious, and utterly intolerable in a civilized community."  *House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d 730 (2008) (quoting Restatement (Second) of Torts § 46, cmt. d (Am. L. Inst. 1965)).  To make this determination, the court considers "whether the offensiveness of the conduct exceeds any reasonable limit of social toleration."  *Id.* at 358-59 (quotation omitted).  The means of inflicting the injury must be "extraordinary."  *Humphers v. First Interstate Bank of Or.*, 68 Or. App. 573, 576, 684 P.2d 581 (1984), *rev'd in part on other grounds*, 298 Or. 706, 696 P.2d 527 (1985).  A defendant's "[l]ack of foresight, indifference to possible distress, [and] even gross negligence, is not enough to support this theory of recovery."  *Id.* at 577 (quotation omitted).

"Determining whether the alleged conduct is an extraordinary transgression of the bounds of socially tolerable conduct is initially a question of law."  *Delaney v. Clifton*, 180 Or. App. 119, 129, 41 P.3d 1099 (2002).  "It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."  *Derry v. EDM Enters., Inc.*, 2010 WL 3586739, *4 (D. Or. Sept. 13, 2010); *see also House*, 218 Or. App. at 358 ("A trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior.").  To make this judgment,

Page 17 – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

4812-6995-7108v.7 0117674-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Oregon courts have considered several circumstantial factors, including the conduct's lawfulness, whether a special relationship existed between the parties, and whether the conduct in question resulted from "an ulterior motive, for retribution, or for some other offensive purpose (such as to take advantage of a vulnerable victim)." *Delaney*, 180 Or. App. at 131 n.7, 136-37 ("Our review of the cases suggests that a special relationship has been alleged in almost all successfully pleaded [IIED] claims."); *House*, 218 Or. App. at 359 ("The legislature's decision to treat certain conduct as unlawful, or even as criminal, reflects its judgment that the conduct is a transgression of society's general expectations[.]").  And even where such factors exist, they are not dispositive.  *See Titus v. City of Prairie City*, 802 F. Supp. 2d 1210, 1242 (D. Or. 2011), *rev'd in part on other grounds sub nom. Titus v. Horrell*, 488 F. App'x 233 (9th Cir. 2012) (dismissing IIED claim where, even factoring in special employee-employer relationship that "potentially heightened the outrageousness of the conduct," employer's public disclosure of plaintiff's medical history without his consent did not rise to socially intolerable levels).

Applying these standards, Plaintiff's allegations fail to state plausible allegations of the requisite extraordinary transgression of socially intolerable conduct.  First, as discussed above, Plaintiff is not entitled to the inference that Defendants did not seek to contact her, and the Book did not reveal information that was not already public.  But even if the Court took the allegations as true, the alleged conduct does not rise to the level of an extraordinary transgression of the bounds of socially intolerable conduct.  Examples of what Oregon courts find to *be* an extraordinary transgression of the bounds of socially intolerable conduct show that the alleged conduct here is *not*.  For example, an Oregon court has found it socially intolerable where defendants—with the ulterior motive of having plaintiff bus driver removed from his route—publicly alleged that plaintiff had sexually abused a child *without having any evidence* to support their claims but with the understanding and intent that it would directly affect his livelihood. *Kraemer v. Harding*, 159 Or. App. 90, 111, 976 P.2d 1160 (1999).  Similarly, the Oregon Supreme Court found it socially intolerable for a defendant supervisor to deceptively confront an

Page 18 – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

employee about theft and use "a deliberate and systematic tactic to threaten and frighten the employee into a confession," causing her to later lose her job, where his evidence of her involvement in the theft was minimal. *See Hall v. May Dep't Stores Co.*, 292 Or. 131, 141-42, 637 P.2d 126 (1981), *abrogated on other grounds by McGanty v. Staudenraus*, 321 Or. 532, 901 P.2d 841 (1995). This Court has determined that the repeated public distribution of homophobic letters targeting a member of the community was "tantamount to criminal conduct" and thus socially intolerable where those letters included at least one swastika, anti-gay slurs, and material that "suggest[ed] violence," including Biblical references that the letters' author interpreted to promote the use of a "high powered rifle." *Simpson v. Burrows,* 90 F. Supp. 2d 1108, 1114, 1124 (D. Or. 2000).

Defendants find no case in which an Oregon court or a court applying Oregon law has found the publication of factual details about another person—without any allegations of deception, a special relationship, or criminal behavior—to constitute an extraordinary transgression of socially tolerable bounds. Plaintiff alleges none of these factors and instead simply alleges that Defendants' unconsented publication of a Book that includes details about her life rises to socially intolerable levels. Plaintiff may find the alleged conduct to be objectionable, but it was not tortious. Plaintiff fails to state her IIED claim, and the Court should dismiss it.

## IV.    ARGUMENT: ORS 31.150 SPECIAL MOTION TO STRIKE

If the Court determines the documents submitted in support of Defendants' Rule 12(b)(6) motion are not incorporated by reference or judicially noticeable, then, in the alternative, the Court should consider the documents under ORS 31.150 and dismiss Plaintiff's claims against Defendants.

### A.    Oregon's anti-SLAPP statute applies and provides a basis for dismissal.

Oregon's anti-SLAPP statute is designed to "'protect[] individuals from meritless, harassing lawsuits whose purpose is to chill protected expression.'" *Gardner v. Martino*, 2005

WL 3465349, at *2 (D. Or. Sep. 19, 2005) (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d

832, 837 n.7 (9th Cir. 2001)), *aff'd*, 563 F.3d 981 (9th Cir. 2009). The statute involves a two-

step process. ORS 31.150(3). First, a defendant must demonstrate that the claim against which

the motion is made arises from one of the categories of civil actions described in ORS 31.150(2).

*Gardner*, 563 F.3d at 986 (applying Oregon law). At this first step, the court must broadly

consider the defendants' conduct and may not narrow "the focus to the specific portion of

defendants' conduct that plaintiffs [find] objectionable." *Mullen v. Meredith Corp.*, 271 Or.

App. 698, 705, 353 P.3d 598 (2015). If the defendant meets this burden, then the burden shifts to

the plaintiff to "to establish that there is a probability that the plaintiff will prevail on the claim

by presenting substantial evidence to support a prima facie case." ORS 31.150(3).

In federal court, to avoid any conflict between state and federal law, the court's analysis

at this second step depends on the motion's basis. *Planned Parenthood Fed'n of Am., Inc. v. Ctr.

for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018).

> If a defendant makes an anti-SLAPP motion to strike founded on
> purely legal arguments, then the analysis is made under Fed. R.
> Civ. P. 8 and 12 standards; if it is a factual challenge, then the
> motion must be treated as though it were a motion for summary
> judgment and discovery must be permitted.

*Id.* (citation omitted); *see also Metabolife*, 264 F.3d at 840 (concluding that a defendant's anti-

SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for her

claims *or* when no sufficiently substantial evidence exists to support a judgment for her).

Here, Defendants' alternative anti-SLAPP motion challenges the factual bases for

Plaintiff's allegations. Using the framework of Rule 56, Plaintiff cannot marshal evidence to

create a genuine issue of material fact. Because she cannot meet her burden with respect to

either of her claims against Defendants, the Court should strike the claims under ORS 31.115.[8]

---

[8] To avoid redundancy, the analysis in this Section incorporates the analysis of Plaintiff's claims
in Defendants' Motion to Dismiss (Section III), to the extent applicable under the differing anti-
SLAPP analysis.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**B.      Oregon's anti-SLAPP statute applies to the conduct alleged.**

Defendants meet their burden under the first anti-SLAPP step.  The categories of conduct

ORS 31.150 covers include:

> (c) Any oral statement made, or written statement or other
> document presented, in a place open to the public or a public
> forum in connection with an issue of public interest; or
>
> (d) Any other conduct in furtherance of the exercise of the
> constitutional right of petition or the constitutional right of free
> speech in connection with a public issue or an issue of public
> interest.

ORS 31.150(2).  Here, the conduct alleged falls under ORS 31.150 because the Book is a written

document presented in a public place, because publishing the Book serves as conduct in

furtherance of their right to free speech, and because the Book concerns an issue of public

interest.

**1.      The Book is a written document presented in a place open to the
public or a public forum.**

The Book is a "written statement or other document presented[] in a place open to the

public or a public forum."  ORS 31.150(2)(c).  Plaintiff herself alleges that the Book is "readily

available in Oregon," Compl. ¶ 20, and multiple copies of the Book are available for free public

access via the Multnomah County Public Library, a place indisputably "open to the public."

Kono Decl. ¶ 3.

**2.      Writing and publishing the Book constitutes conduct in furtherance of
Defendants' exercise of the constitutional right to free speech.**

The First Amendment unquestionably protects publication of a book.  *See Grosjean v.*

*Am. Press Co.*, 297 U.S. 233, 249 (1936) ("[B]y the First Amendment it was meant to preclude

the national government, and by the Fourteenth Amendment to preclude the states, from

adopting any form of previous restraint upon printed publications, or their circulation[.]")

Writing and publishing the Book thus constitutes "conduct in furtherance of the exercise of…the

constitutional right of free speech."  ORS 31.150(2)(d).

Page 21 – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

3.    **The Book concerns an issue of public interest.**

Generally, the term "public interest" is construed broadly under Oregon's anti-SLAPP

statute. *See DuBoff v. Playboy Enters. Int'l, Inc.*, 2007 WL 1876513, at *7 (D. Or. June 26,

2007) ("The term [public interest] has been applied broadly…in Oregon state and federal

cases.").  "The term 'public interest' includes '*any issue in which the public is interested*[,]' and

the issue need not be 'significant' to be protected." *Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d

900, 908 (D. Or. 2020) (alterations in original) (internal quotation omitted); *see also Neumann v.*

*Liles*, 295 Or. App. 340, 345, 434 P.3d 438 (2018) (online review of wedding venue is an issue

of public interest); *Plotkin v. State Accident Ins. Fund*, 280 Or. App. 812, 818, 385 P.3d 1167

(2016) (dismissal of CEO based on allegedly inappropriate comments is an issue of public

interest); *Young v. Davis*, 259 Or. App. 497, 504, 314 P.3d 350 (2013) (noting trial court's

finding that alleged sexual harassment between employees is an issue of public interest).

Here, the Book's content is of public interest.  Plaintiff concedes that the Book's primary

subject, novelist Pat Conroy, was "a famous author" who had written numerous books.  Compl.

¶¶ 9, 24.  Conroy's life was a subject of many newspaper articles.  *See, e.g.*, Kono Decl. Exs. 5-

8, 10-12.  Similarly, numerous books have been written about him, including most recently

Clark's Book and co-defendant Bernie Schein's book.  These demonstrate that Pat Conroy's life

story is of public interest.

Because Pat Conroy was of such public interest, it follows that specific details about his

life also constitute issues of public interest.  This is especially true where the specific details

focus on Pat Conroy's interactions with his family members, his reactions to revelations of

sexual abuse of a family member, and the impact those revelations and reactions had on his life.

*See Dossett*, 472 F. Supp. 3d at 909.  The public interest in the abuse allegedly suffered by

Plaintiff as Conroy's stepdaughter was made evident by the numerous articles that referenced it

throughout the 1980s, when the abuse had allegedly occurred.  Kono Decl. Exs. 5-12.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Because the Book's content is a matter of public interest, and because the Book is a document presented in a place open to the public as well as conduct in furtherance of the constitutional right to free speech, Plaintiff's claims fall under ORS 31.150(2)(c) and (d).

**C.    Defendants are entitled to judgment as a matter of law because Plaintiff cannot establish any issue of material fact.**

**1.    Plaintiff cannot create a genuine issue of material fact with respect to her public disclosure of private facts claim.**

An invasion of privacy claim for public disclosure of private facts in Oregon requires Plaintiff to prove four elements: (1) the existence of plaintiff's private information which would have remained private; (2) that Defendants made that private information known to the public; (3) the publication of that information would be offensive to a reasonable person; and (4) the Defendants' conduct was wrongful apart from inflicting emotional distress on the plaintiff.  *See supra* Section III.B.1.  Defendants are entitled to judgment on this claim because Plaintiff cannot create a genuine issue of material fact with respect to the prior publicity of the relevant facts, the inoffensiveness of Defendants' conduct, or that conduct's lack of wrongfulness.

**a.    Plaintiff cannot create any issue of fact to dispute that all relevant details in the Book had been public prior to the Book's publication, entitling Defendants to judgment.**

Plaintiff cannot present any evidence to create a genuine issue of fact to dispute that *every* relevant fact in the Book was previously publicized.  *See supra* Section III.B.1.b.  Because Plaintiff cannot establish that any relevant fact had been private until the Book's publication, and because generally asserting that the Book's contents were private is insufficient, no genuine issue of fact exists.  Defendants are therefore entitled to judgment on Plaintiff's invasion of privacy claim as a matter of law.

**b.    Plaintiff cannot show a genuine issue of fact about whether Defendants' conduct was offensive to a reasonable person.**

Plaintiff cannot create an issue of material fact that would tend to show that Defendants' publication of the Book was highly offensive to a reasonable person.  Disclosure of intimate

Page 23 – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

details without a plaintiff's consent, without more, is insufficient to establish this element. *See supra* Section III.B.1.c (discussing *Hamilton v. Crown Life Ins. Co.*, 246 Or. 1, 423 P.2d 771 (1967)). This is particularly true where, as here, *the details were already public.*

Here, the Book discusses Plaintiff's abuse—sometimes only tangentially (but relevantly)—on eleven of its 263 pages. *See* Kono Decl. ¶ 2 & Ex. 1, at 11-12, 14-15, 17, 22, 23, 24-26, 27. In every instance, the narrative centers on Pat Conroy—the true subject of the Book and a man of public renown. *See* Mewshaw Decl. ¶ 2 (discussing the Book's consistent focus on Pat Conroy); *see* Compl. ¶ 24 (identifying Pat Conroy as "a famous author"). All relevant facts in the Book were previously made public, with many publicly discussed repeatedly over the years, meaning those facts were not private. *See supra* Sections III.B.1.b & IV.C.1.a.

Defendants are entitled to judgment on Plaintiff's public disclosure of private facts claim because she cannot create an issue of fact about the lack of offensiveness of Defendants' conduct in the eyes of a reasonable person.

> ### c. Plaintiff cannot create a genuine issue of material fact to suggest that Defendants' conduct was wrongful.

As discussed above, *see supra* Section III.B.1.d, the truthful presentation of facts cannot give rise to liability for alleged emotional distress "unless the manner or purpose of defendant's conduct is wrongful in some respect apart from causing the plaintiff's hurt feelings." *Anderson v. Fisher Broad. Cos., Inc.*, 300 Or. 452, 469, 712 P.2d 803 (1986). To determine whether the "wrongful" element is met, courts look instead to whether the private facts were wrongfully obtained, or whether the parties enjoyed a special relationship that obligated the defendant to keep the facts private. *See supra* Section III.B.1.d.

Plaintiff cannot create a genuine issue of material fact with respect to her public disclosure of private facts claim because Plaintiff cannot produce admissible evidence to suggest that Defendants' conduct meets the required wrongfulness element. Plaintiff can put forth no evidence to show that Defendants shared a special relationship with Plaintiff or were under an

4812-6995-7108v.7 0117674-000001

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

obligation to keep the relevant (and already public) facts private.  Plaintiff's lack of consent to the Book's publication is not enough to make the publication wrongful.  Her assertions that "Defendants made no effort to seek Emily's permission to tell her story," Compl. ¶ 32, and "[a]t no time prior to publishing [the] Book did any of the Defendants attempt to communicate with [Plaintiff]," *Id.* ¶ 19, even if true (which they are not, *see* Mewshaw Decl. ¶ 4), fail as a matter of law to show wrongfulness.  Defendants are entitled to judgment as a matter of law under Rule 56, and the Court therefore should grant Defendants' anti-SLAPP motion.

      **2.**      **Plaintiff cannot create a genuine issue of material fact with respect to her IIED claim.**

Plaintiff must prove four elements to prevail on her IIED claim: (1) Defendants' intent to inflict severe emotional distress on her; (2) Defendants' acts caused her severe emotional distress, and (3) Defendant's acts extraordinarily transgressed the bounds of socially tolerable conduct.  *See supra* Section III.B.2.  Plaintiff cannot create a genuine issue of material fact suggesting that Defendants intended to inflict any distress on Plaintiff or that their conduct constituted an extraordinary transgression of the bounds of socially tolerable conduct.

      **a.**      **Plaintiff can point to no evidence to suggest Defendants harbored the requisite intent.**

No evidence exists to suggest that "[i]n publishing details about [Plaintiff's] abuse, Defendants Mewshaw and Counterpoint Press intended to inflict severe emotional distress on her" or that Defendants "knew that such distress was certain or substantially certain to result from the publication of the details about the abuse."  Compl. ¶ 44.  The information about Plaintiff contained in the Book was already public, as numerous newspaper articles and books had disclosed it.  Kono Decl. Exs. 2-12.  Publication of already-public information cannot show intent to inflict emotional distress.  Because Plaintiff cannot show any genuine issue of fact regarding Defendants' lack of the necessary intent, Defendants are entitled to judgment on Plaintiff's IIED claim.

Page 25 – DEFS. MEWSHAW AND CATAPULT, LLC'S MOTIONS TO DISMISS AND TO STRIKE

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

### b. Plaintiff can point to no evidence showing that Defendants' conduct constituted an extraordinary transgression of socially tolerable bounds.

To prevail on her IIED claim, Plaintiff must establish that Defendants' conduct was socially intolerable, or "outrageous in the extreme." *Patton v. J.C. Penney Co.*, 301 Or. 117, 124, 719 P.2d 854 (1986), *abrogated on other grounds by McGanty v. Staudenraus*, 321 Or. 532, 901 P.2d 841 (1995). As discussed above, Defendants find no case in which an Oregon court has found the publication of details about another person—without any deception, special relationship, or criminal behavior—to have transgressed socially-tolerable bounds (particularly truthful, already public information). *See supra* Section III.B.2.b. Plaintiff cannot create a question of material fact with respect to this element because the unconsented publication of a book containing intimate details about her past is, without more, insufficient as a matter of law to constitute socially intolerable conduct.

### 3. The Court should award attorney fees under ORS 31.152.

"A defendant who prevails on a special motion to strike made under ORS 31.150 ***shall*** be awarded reasonable attorney fees and costs." ORS 31.152(3) (emphasis added). This provision is substantive and applies in federal court. *See Planned Parenthood*, 890 F.3d at 833 (noting that anti-SLAPP fee provisions "have been found to not conflict with the Federal Rules of Civil Procedure"). Because Defendants are entitled to prevail on their anti-SLAPP motion, the Court is required to award their reasonable attorney fees and costs.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4812-6995-7108v.7 0117674-000001

## V.    CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's claims against them with prejudice under Rule 12 or, in the alternative, dismiss Plaintiff's claims without prejudice under ORS 31.150 but with an award of attorney fees.

DATED this 20th day of September, 2021.

**DAVIS WRIGHT TREMAINE** LLP

By  s/ Kevin H. Kono
    **Kevin H. Kono**, OSB #023528
    **Meagan A. Himes**, OSB #193787
    Telephone: (503) 241-2300
    Facsimile: (503) 778-5299
    kevinkono@dwt.com
    meaganhimes@dwt.com

    Attorneys for Defendants Michael Mewshaw and
    Catapult, LLC, erroneously sued as
    "Counterpoint Press, a California Corporation"

4812-6995-7108v.7 0117674-000001          DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main ∙ (503) 778-5299 fax