IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **EMILY CATHERINE CONROY**, | Case No. 3:21-cv-298-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MICHAEL MEWSHAW, an individual; COUNTERPOINT PRESS, a California corporation; BERNIE SCHEIN, an individual; and SKYHORSE PUBLISHING, INC., a Delaware corporation**, | |
| Defendants. | |

Jamie S. Kilberg, KAUFFMAN KILBERG LLC, 1050 SW 6th Avenue, Suite 1414, Portland, OR 97204. Of Attorneys for Plaintiff.

Kevin H. Kono and Megan A. Himes, DAVIS WRIGHT TREMAINE LLP, 1300 SW Fifth Avenue, Suite 2400. Of Attorneys for Defendants Michael Mewshaw and Catapult, LLC (which Defendants contend Plaintiff erroneously calls Counterpoint Press).

Christopher E. Hawk and Kelly Frances Huedepohl, GORDON & REES LLP, 1300 SW 5th Avenue, Suite 2000, Portland, OR 97201. Of Attorneys for Defendants Bernie Schein and Skyhorse Publishing, Inc.

**Michael H. Simon, District Judge.**

      United States Magistrate Judge Stacie F. Beckerman issued Findings and

Recommendation in this case on April 12, 2022. Judge Beckerman recommended that this Court

PAGE 1 – OPINION AND ORDER

deny Defendants Michael Mewshaw and Catapult, LLC's[1] (Defendants) request for judicial notice, motion to dismiss, and anti-SLAPP motion to strike.

Under the Federal Magistrates Act (Act), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

Defendants object to Judge Beckerman's recommendation that the Court deny Defendants' request for judicial notice, motion to dismiss, and motion to strike. The Court addresses each objection in turn.

---

[1] As explained by Judge Beckerman, Plaintiff appears to have erroneously named Counterpoint Press as a defendant instead of Catapult, LLC and will file a conforming amended complaint after resolution of the pending motions. ECF 51, at 1 n.1.

PAGE 2 – OPINION AND ORDER

A.  **Defendants' Request for Judicial Notice**

Defendants object to Judge Beckerman's recommendation that the Court deny their request for judicial notice. Defendants argue that the Court must take judicial notice of the fact that the documents attached to its request were published and existed in the public realm. Defendants argue that based on the contents of those publications, Plaintiff's allegation that Defendants disclosed private information not previously made public is not plausible. The Court agrees with Defendants that the Court must take judicial notice of the publication of the documents attached to their request but is not persuaded that judicial notice of these documents is fatal to Plaintiff's privacy claim at the pleading stage.

Defendants ask the Court to take judicial notice of excerpts of certain books and newspaper articles "for the purpose of considering the publication of each item and its content's existence in the public realm at the time." ECF 29, at 2. The Court grants Defendants' request. The publication and existence of these materials in the public realm are the kinds of facts that may be judicially noticed because they can be "accurately and readily determined" and there is no reason to question their accuracy. *See* Fed. R. Civ. P. 201(b). Moreover, Plaintiff does not oppose Defendants' request to the extent it only seeks judicial notice of the fact that the book and newspaper article excerpts existed in the public realm. *See* ECF 35, at 12-13 n.2; ECF 58, at 3. Under Federal Rule of Evidence 201(c)(2), the Court therefore must take judicial notice of that fact—that the book and newspaper articles attached to Defendants' request were published and existed in the public realm at the time of their publication.

The Court is not persuaded, however, that taking judicial notice of the publication of these documents renders Plaintiff's allegations implausible. Defendants argue that the judicially noticed documents disclose the very same information at issue in this lawsuit, and because those documents were published before Defendants' book, Plaintiff's allegation that Defendants

PAGE 3 – OPINION AND ORDER

disclosed private information is not plausible and the Court may disregard that allegation under *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (stating that at the motion to dismiss stage, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").

Defendants' motion to dismiss includes a table that compares quotations from Defendants' book with quotations from the prior publications (the judicially noticed documents) to show that the information disclosed in Defendants' book was already public when Defendants' book was published. *See* ECF 28, at 16-20. Some of the quotations from Defendants' book, however, describe Plaintiff's abuse in arguably more graphic detail. *See id.* at 17-18. Thus, drawing all reasonable inferences in Plaintiff's favor, the Court does not conclude that the judicially noticed documents contradict Plaintiff's allegation that Defendants disclosed her private information. *See Lee*, 250 F.3d at 690 (concluding the district court abused its discretion by failing to draw all reasonable inferences in the plaintiff's favor, taking judicial notice of disputed facts stated in public records, and dismissing the plaintiff's claim in part based on those disputed facts).

The Court need not resolve Defendants' objections regarding incorporation by reference because the Court has granted Defendants' request for judicial notice. The Court notes, however, that a complaint must "extensively" refer to a document to incorporate that document by reference or the document must otherwise form the basis for the plaintiff's claims. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003))). "[T]he mere mention of the existence of a document is

PAGE 4 – OPINION AND ORDER

insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Here, Plaintiff's Complaint refers to Katherine Clark's book in passing only a few times, which is not "extensive," and Clark's book does not form the basis of Plaintiff's claims. The Complaint therefore does not incorporate Clark's book by reference.

**B.  Whether Plaintiff States a Claim for Invasion of Privacy**

Defendants object to Judge Beckerman's conclusion that Plaintiff adequately alleged that Defendants disclosed private information. In addition to their argument that the judicially noticed documents render Plaintiff's allegation implausible (addressed above), Defendants argue that under Rule 8, Plaintiff must allege the specific private facts that Defendants allegedly made public. In support of that argument, Defendants cite no binding authority holding that an invasion of privacy claim is subject to dismissal if it does not allege the private information with particularity. *See* ECF 39, at 12; ECF 55, at 24. Moreover, the non-binding cases Defendants do cite merely stand for the proposition that a conclusory recitation of the elements of an invasion of privacy claim does not withstand a Rule 12(b)(6) motion. *See, e.g.*, *Broemer v. United States*, 2003 WL 27382055, at *4 (C.D. Cal. Sept. 30, 2003) ("The complaint alleges in conclusory fashion that defendants 'publicly disclosed private facts about plaintiff, this disclosure was offensive and objectionable to a reasonable person, and not of legitimate public concern. . . . Defendants, and each of them, have intruded upon plaintiff's seclusion and publicly disclosed private facts on many occasions, over many years.'").

Plaintiff has done more than merely recite the elements of her privacy claim. *See* ECF 1, ¶ 10 ("When Emily was young, and for many years, Dr. Fleischer savagely and repeatedly raped and sexually abused Emily."); *id.* ¶ 18 ("[T]he Mewshaw Book and the Schein Book specifically name Emily as the victim of Dr. Fleischer's abuse. . . . [T]he Mewshaw Book and the Schein Book also include graphic details of the abuse Emily suffered that had not before been published

PAGE 5 – OPINION AND ORDER

or otherwise made public."); *id.* ¶ 36 ("The facts disclosed in the Schein Book about Emily's sexual abuse are private facts."). The Court agrees with Judge Beckerman that Plaintiff has adequately alleged disclosure of private information.

Defendants also object to Judge Beckerman's conclusion that Plaintiff adequately alleged the fourth element of her invasion of privacy claim—that the disclosure was wrongful apart from causing Plaintiff emotional distress. Defendants argue that under *Anderson v. Fisher Broadcasting Cos.*, 300 Or. 452 (1986), to allege that the disclosure was wrongful, Plaintiff must allege that Defendants had a duty not to disclose the private information. Defendants misread *Anderson*. In *Anderson*, the Oregon Supreme Court held that to state claim for invasion of privacy by disclosure of private facts, a plaintiff must allege that the public disclosure "is wrongful in some respect apart from causing the plaintiff's hurt feelings." *Id.* at 469. The Oregon Supreme Court then offered a non-exhaustive list of examples of wrongful disclosure, including intentionally inflicting emotional distress, wrongfully obtaining the private information, or disregarding a duty of confidentiality. *See id.* Nowhere in the opinion, however, does the Oregon Supreme Court hold that to allege wrongfulness, the plaintiff *must* allege that the defendant breached a duty not to disclose.

Moreover, in *Marleau v. Truck Insurance Exchange*, the Oregon Supreme Court applied *Anderson* and held that the plaintiffs failed to state a claim for invasion of privacy by disclosure of private facts because they had not alleged that the defendants disclosed the information in a "wrongful" way *such as* obtaining the information wrongfully *or* violating a duty not to disclose. 333 Or. 82, 93-94 (2001). Again, nowhere in *Marleau* does the Oregon Supreme Court state that a plaintiff *must* allege the defendant breached a duty not to disclose.

PAGE 6 – OPINION AND ORDER

Defendants' interpretation of *Anderson* relies on *Biggs v. City of St. Paul*, 2020 WL 2744092 (D. Or. May 5, 2020), and *FCM v. Washington Mutual Bank*, 2007 WL 4565237 (D. Or. Dec. 21, 2007). Neither *Biggs* nor *FCM* is binding on this Court, and the Court finds them not persuasive. Although *Biggs* and *FCM* both cite *Anderson*, neither opinion addresses the fact that the Oregon Supreme Court in *Anderson* only offered a duty not to disclose as one example of wrongful disclosure. *See Biggs*, 2020 WL 2744092, at *13; *FCM*, 2007 WL 4565237, at *3.

Defendants also rely on *Humphers v. First Interstate Bank of Oregon*, 298 Or. 706 (1985). *Humphers*, however, was issued before *Anderson*, and the Oregon Supreme Court in *Anderson* cast the duty of confidentiality explained in *Humphers* as simply one example of wrongful disclosure. *See Anderson*, 300 Or. at 469 ("For instance, a defendant might incur liability . . . when a defendant disregards a duty of confidentiality or other statutory duty, *see Humphers v. First Interstate Bank* . . . ."). Thus, under Oregon law, Plaintiff must allege that Defendants' disclosure of her private information was in some way wrongful, which may be that Defendants breached a duty not to disclose or obtained the information wrongfully, among other examples. *See id.* at 469. The Court agrees with Judge Beckerman that Plaintiff adequately alleged wrongful disclosure.

**C.  Whether Plaintiff States a Claim for Intentional Infliction of Emotional Distress**

Defendants object to Judge Beckerman's conclusion that Plaintiff adequately alleged the first element of her intentional infliction of emotional distress (IIED) claim—that Defendants intended to cause Plaintiff's emotional distress or knew that Plaintiff's emotional distress was substantially certain to result from Defendants' actions. Defendants argue that Plaintiff failed to allege any fact in support of what Defendants label a conclusory allegation of Defendants' intent and that Judge Beckerman improperly drew an inference in Plaintiff's favor that Defendants

PAGE 7 – OPINION AND ORDER

"refused" to obtain Plaintiff's consent before publishing the book. The Court is not persuaded by this argument.

Plaintiff has alleged sufficient facts to make plausible her allegation of intent. Plaintiff alleges that before the publication of the book, Defendants did not attempt to communicate with Plaintiff or seek her permission to publish intimate details of her childhood abuse (ECF 1, ¶ 19); that Defendants included an afterword dedicated primarily to disclosing the details of Plaintiff's abuse, which was not relevant to the retelling of Defendant Mewshaw's friendship with Plaintiff's step-father (*id.* ¶ 23); that Defendant Mewshaw demonstrated his understanding of the distress an individual may experience when personal details of his or her life are revealed in public (*id.* ¶ 24(a)-(b)); and that Defendant Mewshaw had obtained permission to disclose the private information of other subjects of the book (*id.* ¶ 24(f)). These allegations support Plaintiff's allegation of intent.

Defendants next object to Judge Beckerman's conclusion that Plaintiff adequately alleged the third element of her IIED claim—that Defendants' conduct transgressed socially tolerable bounds. In an order dated July 12, 2022, the Court outlined its tentative analysis of the respective roles of the judge and jury on this element of an IIED claim. *See* ECF 59. The Court asked the parties to notify the Court whether they agreed or disagreed with the Court's analysis, and all parties generally agreed. *See* ECF 60-62. Thus, based on the following analysis, the Court concludes that the issue of whether conduct transgresses socially tolerable bounds becomes a question for the jury if a court determines that reasonable minds could differ.

In *Dawson v. Entek International*, the Ninth Circuit stated that under Oregon law the social transgression element of this tort is a "question of law." 630 F.3d 928, 941 (9th Cir. 2011) (quoting *Harris v. Pameco Corp.*, 170 Or. App. 164, 171 (2000)). In that case, the Ninth Circuit

held that the district court did not err in granting summary in favor of a defendant employer against the plaintiff's IIED claim. This "question of law" statement requires development. As noted, the Ninth Circuit in *Dawson* quoted the Oregon Court of Appeals' decision in *Harris*. In *Harris*, however, the Oregon Court of Appeals reversed the trial court's grant of a directed verdict in favor of the defendant, explaining: "On this record, a jury could find that George's physical contact with plaintiff in conjunction with his statements to plaintiff constituted a course of sexual harassment and, therefore, socially intolerable conduct." *Harris*, 170 Or. App. at 172. Thus, at least to this Court, *Dawson* does not stand for the proposition that there is never a role for the jury in deciding whether a certain set of facts can satisfy the social transgression (or outrageousness) element of an IIED claim.

Rather, it appears that the relevant "question of law" to be decided by a court as gatekeeper is whether the alleged conduct *could* be regarded by a reasonable jury as beyond socially tolerable bounds. Thus, at this stage of a lawsuit, a court merely performs an initial gatekeeping function regarding the element of social transgression, and if a court concludes that a reasonable jury could find in favor of the plaintiff on that issue, then the question goes to the jury.

The Court bases this conclusion, in part, on the Oregon Supreme Court's decision in *Hall v. May Department Stores Co.*, 292 Or. 131 (1981), *abrogated on other grounds*, *McGanty v. Staudenraus*, 321 Or. 532 (1995). In that case, the Oregon Supreme Court explained:

> To put the same point another way, the law, much as in negligence cases, calls on the factfinder, jury or judge, to decide two kinds of questions. One kind concerns what the defendant did, with what intent, and to what extent his acts caused the plaintiff severe emotional distress. These are questions of *historical facts*. Assuming that each factual element is shown, the other decision is whether the offensiveness of the defendant's conduct exceeds any reasonable limit of social toleration. *This is a judgment of social*

PAGE 9 – OPINION AND ORDER

> *standards rather than of specific occurrences*. It is the kind of judgment for which the law does not demand the same evidentiary basis that is required for reconstructing disputed events. Despite this distinction, however, each issue is subject to judicial decision in the familiar manner when reasonable factfinders could reach only one conclusion on the evidence.

*Hall*, 292 Or. 131 at 137-38 (emphasis added).

Further, in *House v. Hicks*, the Oregon Court of Appeals stated that the "trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior *and creates a jury question on liability*." 218 Or. App. 348, 358 (2008) (emphasis added). The Oregon Court of Appeals in that case then quoted the following from the Restatement (Second) of Torts:

> It is for the court to determine, in the first instance, whether the defendant's conduct *may reasonably be regarded* as so extreme and outrageous as to permit recovery, or whether it is necessarily so. *Where reasonable men may differ, it is for the jury*, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*Id*. (citing Restatement (Second) of Torts § 46 cmt. h) (emphasis added).

In accord with this distinction, the Oregon Court of Appeals later treated the social transgression element as a question of fact for the jury, if reasonable minds can differ. *See, e.g.*, *McManus v. Auchincloss*, 271 Or. App. 765, 781 (2015) ("Although it is the role of the jury to determine the extent of social norms, in the context of an IIED claim, the court may be required to determine whether no reasonable jury could find the defendant's conduct to have exceeded all bounds of socially tolerable harm."); *Schoen v. Freightliner LLC*, 224 Or. App. 613, 629 (2008) ("Taken individually, the acts that Marple, Rasmussen, and Houghton engaged in might not cross the line, but, given the repetitive nature of the conduct and its duration, a jury could find it as a

PAGE 10 – OPINION AND ORDER

whole to be intolerable."); *see also Upchurch v. Multnomah Univ.*, 2021 WL 6066283, at *4 (D. Or. Dec. 7, 2021) (denying motion to dismiss and stating: "Where the court determines that reasonable people might differ, 'it is for the jury, subject to the control of the court, to determine whether . . . the conduct has been sufficiently extreme and outrageous as to result in liability.'" (quoting Restatement (Second) of Torts § 46 cmt. h)); *Davis v. Oregon*, 2014 WL 2574489, at *3 (D. Or. June 9, 2014) (adopting findings and recommendation and stating: "Judge Hubel's finding that a reasonable jury could come to the opposite conclusion is supported by the record evidence. Thus, it is 'for the jury, subject to the control of the court, to determine, whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.'" (citation omitted) (quoting *House*, 218 Or. App. at 358)). Other courts draw a similar distinction.[2]

---

[2] *See, e.g.*, *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122-26 (2d Cir. 2019) (reversing grant of motion to dismiss IIED claim in part because reasonable minds could differ on whether the alleged conduct was outrageous, and thus that question should go to the jury); *Smith v. RB Distrib., Inc.*, 515 F. Supp. 3d 311, 320 (E.D. Pa. 2021) ("At the very least, this is a case where 'reasonable [people] may differ' and, as such, 'it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.'" (quoting Restatement (Second) of Torts § 46 cmt. h)); *Gregory v. United States*, 2021 WL 5494669, at *7 (E.D. Okla. Nov. 23, 2021) (granting motion to dismiss IIED claim and stating: "'Only when it is found that reasonable men would differ in an assessment of this critical issue may the tort-of-outrage claim be submitted to a jury.' . . . [T]he Court finds that these allegations are not so extreme and outrageous as to justify submission of the claim to a jury." (citation omitted));  *Peteet v. Hawkins*, 2018 WL 4039375, at *5 (S.D. Tex. July 17, 2018) ("Whether conduct is extreme and outrageous is a question of law for the court to be analyzed on a case-by-case basis, and only when reasonable minds may differ will the question be presented to a jury."); *Kramer v. City of Danbury*, 2010 WL 11661294, at *14 (D. Conn. Jan. 22, 2010) ("Whether the Defendants' conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court. Only where 'reasonable minds differ,' does it become a question for the jury." (citations omitted)); *Kincaid v. Sturdevant*, 437 F. Supp. 2d 1219, 1228 (D. Kan. 2006) (denying motion to dismiss IIED claim and stating: "The allegations of plaintiff's amended complaint, which the court is bound to accept as true at this procedural juncture, are substantial. If she could prove these facts at trial reasonable people could find the defendants' conduct outrageous."); *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wash. 2d 820, 840 (2015) (granting motion to dismiss IIED claim and stating:

PAGE 11 – OPINION AND ORDER

The Court recognizes that courts often dismiss IIED claims at the pleading, or motion to dismiss, stage of a lawsuit. *See, e.g.*, *Wolf v. Ron Wilson Ctr. for Effective Living, Inc.*, 2010 WL 4638888, at *7 (D. Or. Nov. 8, 2010). But based on the Court's reading of the cases discussed above, it appears that when a court dismisses an IIED claim on a motion to dismiss, the court is merely performing its "gatekeeping role" after finding that, even if the alleged conduct could be proven, no reasonable juror could conclude that such conduct is "outrageous" for purposes of this element. *See Clemente v. State*, 227 Or. App. 434, 442 (2009) ("Whether conduct amounts to an actionably outrageous transgression of social norms is a fact-specific, case-by-case determination. Despite the fact that deciding the contours of social norms is precisely the sort of inquiry that is appropriately undertaken by a jury, in the context of an IIED claim, the court, functioning as a gatekeeper, performs that role in the first instance." (citation omitted)).

Thus, under Oregon law, an IIED claim must be dismissed if no reasonable juror could conclude that the alleged conduct transgresses socially tolerable bounds. If the Court determines that reasonable minds could differ on whether the alleged conduct transgresses socially tolerable bounds, then that question becomes a matter for the jury. *See id.* at 358; Restatement (Second) § 46 cmt. h.

Further, in making this determination, the Court looks to factors such as whether there is a special relationship between the parties, whether the defendant engaged in deception, and whether the conduct is illegal, among other factors. *See House*, 218 Or. App. at 358-61. Defendants argue that under Oregon law, Plaintiff *must* allege a special relationship, deception,

---

"Although a jury ultimately determines if conduct is sufficiently outrageous, the court makes the initial determination of whether reasonable minds could differ about whether the conduct was sufficiently extreme to result in liability." (quotation marks omitted)).

PAGE 12 – OPINION AND ORDER

or criminal behavior. ECF 28, at 26; ECF 55, at 29. Defendants cite several Oregon cases in which the plaintiff stated an IIED claim that alleged one of those three factors. Defendants, however, have not identified any Oregon case stating that a plaintiff must allege a special relationship, deception, or criminal behavior. Based on the Court's review of these cases, the Court concludes that the presence of a special relationship, deception, or criminal behavior are factors that may strengthen a plaintiff's IIED claim, but the absence of which is not dispositive.[3]

With this framework in mind, the Court turns to the sufficiency of Plaintiff's allegations regarding the social transgression element of her IIED claim. Plaintiff argues that Defendants' conduct transgresses socially tolerable bounds because they intentionally declined to obtain Plaintiff's permission before publishing graphic details of Plaintiff's abuse. Defendants argue that without more, their failure to obtain Plaintiff's permission is not enough to constitute outrageous conduct. Based on the facts of this case, however, the Court concludes Plaintiff adequately alleges the social transgression element. Plaintiff alleges that Defendants exposed the graphic details of severe sexual abuse that Plaintiff suffered as a child at the hands of her biological father. ECF 1, ¶¶ 10, 15, 18. Plaintiff further alleges that Defendants did not attempt to

---

[3] *See Clemente v. State*, 227 Or. App. 434, 442 (2009) ("Courts are *more likely* to consider behavior outrageous if it is inflicted on the more vulnerable partner in a 'special relationship' such as employer-employee." (emphasis added)); *House*, 218 Or. App. at 360 ("Our precedents identify several *contextual factors* that guide the court's classification of conduct as extreme and outrageous. The most important factor is whether a special relationship exists between a plaintiff and a defendant . . . ." (emphasis added)); *Delaney*, 180 Or. App. at 131 & n.7 (stating that the lack of a special relationship "generally" defeats an IIED claim and noting: "Our review of the cases suggests that a special relationship has been alleged in *almost* all successfully pleaded claims." (emphasis added)); *Harris*, 170 Or. App. at 172 ("[W]e *may* consider the existence of a special relationship, including an employer and employee relationship, between the parties in determining the bounds of socially tolerable conduct." (emphasis added)); *see also T.L. ex rel. Lowry v. Sherwood Charter Sch.*, 68 F. Supp. 3d 1295, 1321 (D. Or. 2014) ("Finally, while a 'special relationship' is not an element of an IIED claim, the presence of a special relationship is relevant to whether the alleged conduct is outrageous and extreme.").

PAGE 13 – OPINION AND ORDER

inform Plaintiff of their intention to publish this information or seek her permission even though they did so with other subjects of Defendants' book. *Id.* ¶¶ 19, 24(f), 45. Even in the absence of a special relationship, deception, or criminal behavior, due to the highly sensitive nature of the information Defendants allegedly disclosed, the Court concludes that reasonable minds could find that Defendants' conduct transgressed socially tolerable bounds. Thus, Plaintiff has adequately stated the third element of her IIED claim.

### D. Defendants' Motion to Strike

Defendants also object to Judge Beckerman's conclusion that discovery should be allowed before the Court rules on Defendants' anti-SLAPP motion. Defendants argue that under *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828 (9th Cir. 2018), Plaintiff must comply with Rule 56(d) by submitting a declaration or affidavit identifying the specific facts Plaintiff wishes to pursue in discovery. Defendants argue that because Plaintiff failed to do so, the Court should rule on Defendants' anti-SLAPP motion challenging the factual sufficiency of Plaintiff's claims on the merits. Defendants also contend that no amount of discovery could create any issue of fact material to any of Plaintiff's claims.

Under *Planned Parenthood*, a party opposing an anti-SLAPP motion challenging the factual sufficiency of its claims "must" have the opportunity to conduct discovery in federal court. 890 F.3d at 834 ("[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court."). Here, the parties have not yet engaged in discovery. Thus, the Court finds it premature to rule on the merits of Defendants' anti-SLAPP motion before Plaintiff has had that opportunity.

Additionally, assuming a party must comply with Rule 56(d) when opposing an anti-SLAPP motion challenging the factual sufficiency of the party's claims, the Court nevertheless concludes that it retains the discretion to defer ruling on such a motion when there has been no discovery. Although failure to comply with Rule 56(d) may be a basis to deny a party's request for further discovery, the rule does not require the Court to rule on the merits of a summary judgment motion (or anti-SLAPP motion challenging factually sufficiency) solely because the party seeking further discovery identified those discovery topics in an opposition brief rather than declaration or affidavit.[4]

---

[4] *See Colvin v. Young*, 2015 WL 1808900, at *4 (W.D. Wash. Apr. 21, 2015) (deferring ruling on the defendant's summary judgment motion as premature under Rule 56(d) even though the plaintiffs raised the need for further discovery in their opposition brief); *VenVest Ballard, Inc. v. Clockwork, Inc.*, 2014 WL 12570251, at *4 (C.D. Cal. June 2, 2014) ("[W]hile the failure to comply with the procedural requirements of Rule 56(d) is a proper ground for denying discovery, such denial is not mandatory. . . . Furthermore, when no discovery has taken place, a lesser showing of specificity is required as to the anticipated discovery."); *Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*, 2013 WL 11324312, at *4 (C.D. Cal. Apr. 16, 2013) ("Although Allahyari's declaration does not technically satisfy the requirements of Rule 56(d), its lack of specificity is understandable, given that Ahl-E-Bait has had *no* opportunity to conduct any discovery in this case. Several courts have held that under such circumstances, clearly requesting denial without prejudice or continuance of the motion, and advising the court that no discovery has occurred suffices to satisfy Rule 56(d)." (emphasis in original) (citing cases)); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 2008 WL 655604, at *16 (C.D. Cal. Jan. 7, 2008) (concluding that the defendant's summary judgment motion was premature as to one issue due to a need for further discovery even though the plaintiff failed to file an declaration or affidavit under Rule 56(d)); *see also Invs. Title Ins. Co. v. Bair*, 232 F.R.D. 254, 256 (D.S.C. 2005) ("[I]n some cases courts have held that summary judgment was premature even when the opposing party failed to file a Rule 56(f) affidavit. . . . When the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved, courts have not always insisted on a Rule 56(f) affidavit if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary. . . . Specifically, if the nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit,' and if the nonmoving party was not lax in pursuing discovery, then the court may refuse to consider a motion for summary judgment as premature, even though the nonmovant did not record its concerns in the form of a Rule 56(f) affidavit."); Wright & Miller, *Federal Practice & Procedure* § 2740 ("[I]n certain circumstances courts have indicated that continuances would be proper even though Rule 56(d) had not been

Plaintiff' opposition brief identifies several key factual disputes relevant to each of her claims, such as whether the information contained in Defendants' book was previously disclosed, Defendants' intent, and Defendants' attempt or lack thereof to seek Plaintiff's permission, among others. Accordingly, the Court agrees with Judge Beckerman that further discovery is needed before the Court can rule on Defendants' anti-SLAPP motion.

## CONCLUSION

The Court ADOPTS IN PART AND DECLINES TO ADOPT IN PART Judge Beckerman's Findings and Recommendation (ECF 51). The Court GRANTS Defendants' request for judicial notice (ECF 29) but DENIES Defendants' motion to dismiss (ECF 28) and motion to strike (ECF 28).

**IT IS SO ORDERED.**

DATED this 28th day of July, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

formally complied with when the court concluded that the party opposing summary judgment had been diligent and had acted in good faith.").